# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

LORENZO WOOD, JR.,

                                   Plaintiff,

          -vs-                                    Case No.   13-CV-281

PATRICIA BILLINGS,
SUE NEIL, and MARK BENDER,

                                   Defendants.

## DECISION AND ORDER

          The pro se plaintiff, Lorenzo Wood, Jr., a Wisconsin state prisoner, filed this

civil rights action pursuant to 42 U.S.C. § 1983.  He is proceeding *in forma pauperis* on an

Eighth Amendment deliberate indifference to a serious medical need claim based on

amended complaint allegations that the defendants failed to follow medical instructions

resulting in a severe knee infection.  Defendants Patricia Billings and Sue Neil have filed a

motion for summary judgment for failure to exhaust administrative remedies.  Defendant

Mark Bender, who is represented by separate counsel, has filed a motion for summary

judgment on the merits.  These motions will be addressed herein.

### SUMMARY JUDGMENT STANDARD

          "The court shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## FACTS

### A. Defendants Billings and Neil's Motion for Summary Judgment

Defendants Billings and Neil are employees of the Wisconsin Department of Corrections ("DOC") at the Racine Correctional Institution ("RCI"). The plaintiff is an

inmate at RCI.

Michelle Bones is the Institution Complaint Examiner at RCI. Wisconsin Administrative Code § DOC 310.05 requires an inmate to exhaust all administrative remedies that DOC has promulgated by rule before he may commence a civil action against an officer, employee or agent of DOC in that person's official or individual capacity.

The plaintiff attempted to file an inmate complaint dated April 27, 2011, concerning the claim on which he has been allowed to proceed. On May 5, 2011, the inmate complaint was returned to him and he was directed, pursuant to Wis. Adm. Code § DOC 310.09(4), to attempt to resolve the issue by contacting Deputy Warden Dr. Apple. The inmate complaint was returned along with a memo from Nancy Padgett stating:

> Inmates writing to staff must follow the chain of command noted in the inmate handbook. All three levels must be exhausted before writing to the Warden or filing an Inmate Complaint. Dr. Apple the Deputy Warden would be your next level in the chain of command.
>
> The ICE is also directing you to provide this office with written documentation of your attempts to resolve the issue as directed. Written documentation means responses to interview requests and other written responses from the staff contacted.
>
> If you have attempted to resolve the issue through the person(s) indicated above and have not been able to do so, you may resubmit your complaint (with all pertinent documentation) for processing by this office within 14 calendar days of the date of this return letter.

(Bones Aff. ¶ 6, Exh. 4.)

On May 6, 2011, the plaintiff wrote a letter to Dr. Apple as directed by Nancy

3

Padgett. (Bones Aff. ¶ 8, Exh. 12.) He wrote a follow-up letter to Dr. Apple on June 16, 2012, requesting a written response. (Bones Aff., Exh. 14.)

On June 24, 2011, DOC Medical Director David E. Burnett wrote the plaintiff a letter referencing his June 6, 2011, letter to Dr. Burnett. (Bones Aff., Exh. 13.) Dr. Burnett's letter states that he is reviewing medical records and will follow-up with a response to the plaintiff's letter. On August 24, 2011, the plaintiff wrote a letter to Dr. Burnett requesting a response to his June 6, 2011, letter. (Bones Aff., Exh. 15.)

The plaintiff resubmitted his inmate complaint twice during this time period, once after Dr. Apple failed to provide a written response and once after Dr. Burnett failed to respond in writing. (Wood Aff. ¶¶ 73, 78.) Nancy Padgett refused to file the inmate complaint and returned it to him both times without explanation.

The plaintiff filed his complaint in this case on March 13, 2013.

On September 1, 2013, the plaintiff submitted another letter to Dr. Burnett, requesting a written response so that he could prove that he attempted to resolve the matter before filing an inmate complaint. (Bones Aff., Exh. 16.) On September 6, 2013, the plaintiff filed inmate complaint RCI-2013-17380 together with all related documents, concerning the claim on which he has been allowed to proceed. (Bones Aff ¶ 7.) Although the plaintiff included with inmate complaint RCI-2013-17380 a letter that he had written to Dr. Apple dated May 6, 2011, he had not, prior to September 6, 2013, submitted such documentation to the ICE office. (Bones Aff. ¶ 8.) Because the May 5, 2011 memo from

Nancy Padgett required the plaintiff to resubmit his inmate complaint with all pertinent documentation within fourteen calendar days of the May 5, 2011 memo, Bones rejected inmate complaint RCI-2013-17380 because it, together with the required documentation, was received beyond the fourteen-calendar-day limit. (Bones Aff. ¶ 9.) The ICE Rejection Comment provides the following rationale for the rejection:

> The complainant states that he originally filed this complaint on April 2011 regarding a procedure that he had done on his knee on January 2011. His complaint alleges complications and an infection as a result of the procedure and the medical care he states he received.
>
> This complaint was received on 9/6/13. This ICE reviewed the previous ICRS submissions from the complainant. The complainant submitted a similar complaint on 5/3/11. This complaint was returned to the complainant on 5/5/11 with direction to follow the chain of command and contact the Deputy Warden Dr. Apple. It also stated "if you have attempted to resolve the issue through the person indicated above and have not been able to do so, you may resubmit your complaint (with all pertinent documentation) for processing by this office within 14 calendar days of the date of this return letter."
>
> This re-submission by the complainant is clearly not submitted within the specified time limits as was directed by the ICE. The complainant has not contacted the ICE office with any additional documentation prior to his resubmission of this complaint on 9/6/13. With the current submission received on 9/6/13 the complainant included a letter that he had written to Dr. Apple dated 5/6/11, a letter from Dr. Burnett dated 6/24/11, a letter to Dr. Apple dated 6/16/12, a letter to Dr. Burnett dated 8/24/11, and a letter to Dr. Burnett dated 9/1/13.
>
> This complaint is rejected based on being received beyond the 14 day time limit that was initiated by the ICRS return letter dated 5/5/11. No further action is needed by this office.

(Bones Aff. ¶ 9, Exh. 19.)

The plaintiff appealed the rejection of his inmate complaint. His appeal states:

This is an appeal of a Rejected Complaint on September 19, 2013 by Michelle Bones. I originally filed this complaint on 5/3/11 and it was returned, claiming I had to first go through a chain of command. That was not true. I only had to show that I attempted to resolve the matter by taking it up with Health Service Manager Sue Nygren. Ms. Apple is not part of Health Services. I sent proof that I went to the appropriate authority, but ICE refused to file my complaint. Then they placed a burden on me of having to force staff to respond in writing. Since 5/11 I have been trying to get staff to respond in writing, but none will. I sent my complaint to the ICE three times, and each time it was returned to me by someone without a word as to why. All of this was done to prevent me from exhausting my available remedy. Please over-rule the rejected complaint.

(Bones Aff. ¶ 10, Exh. 22.) On October 2, 2013, the Reviewing Authority approved the rejection of RCI-2013-17380. (Bones Aff. ¶ 10, Exh. 23.)

## B. Defendant Bender's Motion for Summary Judgment

Defendant Mark Bender is a physician assistant. He was employed by an agency that contracts with RCI to provide health care to inmates at RCI at all times relevant. The plaintiff claims that defendant Bender and others at RCI failed to properly care for his left knee.

The plaintiff had arthroscopic surgery on his left knee on January 27, 2011, at the Waupun Memorial Hospital. The surgery was performed by Dr. Grossman, who gave post-op orders that included dressing changes for 72 hours, a switch to band aids, and that Dr. Luy was to be informed if the knee became swollen. The plaintiff was discharged from

6

the hospital on January 27, 2011, and returned to RCI.

Defendant Bender avers that on January 31, 2011, a nurse cleaned the surgery site and changed the dressings.[1] (Bender Aff., Ex. A:12.) The plaintiff disputes this and avers that his wound was not cleaned nor were the bandages changed daily as directed. (Wood Aff. ¶¶ 9-11.)

On January 31, 2011, there were no signs or symptoms of infection and the plaintiff was instructed to continue elevating the knee.

On February 10, 2011, at 0930, the plaintiff was seen by a nurse who removed his sutures. No signs or symptoms of infection were noted in the medical record. (Bender Aff., Ex. A:12.) However, the plaintiff avers that Nurse Billings looked at his knee and said that it appeared to be infected. (Wood. Aff. ¶ 17.)

On February 10, 2011, at 1845, the plaintiff complained of pain and stiffness in his left knee with increased drainage that began after his stitches were removed at 0930. His knee was noted to be "slightly swollen." The lateral surgical wound was noted to be draining a moderate amount of fluid and there was no drainage from the medial surgical wound. The plaintiff's temperature was 98 degrees. His surgical wounds were cleaned with Betasept and water, and he was given Naproxen for pain. Nurse Amandy Moore wrote out an appointment slip for the plaintiff to be seen the next day by defendant Bender. (Wood

---

[1] The plaintiff disagrees with all references to his medical records. He asserts that defendant Bender has reason to tamper with his files. He also asserts that neither he nor Bender can state with certainty the accuracy of the records. The records custodian who produced the records verified that the records are true and correct copies of the chart. (Ex. A; Bender Second Aff. ¶5) As such, the chart is presumed reliable and is admissible per Fed. R. Evid. 902(11).

Aff. ¶ 29.)

On February 11, 2011, defendant Bender was first notified the plaintiff had a complaint about his left knee. On that date, a nurse had already examined the plaintiff's left knee and consulted with the surgeon, Dr. Grossman. The nurse spoke with Dr. Grossman who ordered that the surgical wound site be reinforced with steri-strips and an Ace bandage wrap, and that follow-up occur on February 14, 2011. Dr. Grossman also ordered Vicodin, a pain killer, and Cipro, which is an antibiotic. Defendant Bender followed through on Dr. Grossman's order and noted the orders for Vicodin and Cipro.

According to the plaintiff, he was supposed to have been seen by defendant Bender on February 11, 2011, per Nurse Amandy Moore's directive, but Bender refused to see him. (Wood. Aff. ¶ 31.) Instead, he had Nurse Sue Neil examine the plaintiff's knee which was still oozing fluid. *Id.* The plaintiff describes the interactions with Nurse Neil and defendant Bender on February 11, 2011, as follows:

> The plaintiff told RN Sue Neil that he need[ed] to be seen by a doctor at the hospital, and he told her that his knee was in a lot of pain and he could not bend it.
>
> RN Sue Neil insisted that the knee was still draining of fluid, and plaintiff had nothing to worry about. Plaintiff did not agree with the medical assessment by the untrained RN. So he then demanded to be seen by a doctor at the emergency room at a medical hospital for a proper evaluation of his condition. Or at the very least, he demanded to be seen by the P.A Mark Bender.
>
> Instead of calling the P.A. Mark Bender immediately into the room to evaluate my knee, RN Sue Neil pretended to call

8

Doctor Grossman at the Waupun Memorial Hospital. When she came back into the examination room from pretending to call Doctor Grossman, she stated to this plaintiff that Doctor Grossman told her to "Keep an eye on it, and let him know if any changes come about."

Plaintiff again demanded to be taken to the emergency room for medical treatment on his knee.

Even after RN Sue Neil was told about how much pain the plaintiff was in, and heard his demands to be seen by emergency - at a hospital, she still refused to make a call or notify Security at the institution that an emergency existed and a prisoner need to be seen by a doctor at the hospital.

Plaintiff then made a final request to be seen by the "In-House P.A." Mark Bender. Sue Neil called Mark Bender to the examining room to evaluate my knee. Mark Bender refused to come in the room. Instead, he just looked in from a distance while standing in the hallway, and said, "it's just draining."

Plaintiff began to make his complaint to the P.A. Mark Bender, while in tears, telling Bender how much pain he was in, and demanding to be sent to the hospital for an evaluation due to the obvious infection in his leg. Yet, again, Bender stated that the knee was just draining and there was nothing to worry about. Bender simply walked away and ignored plaintiff's cries for help.

R.N. Sue Neil then stated to the plaintiff that it was just draining, and plaintiff should return to his housing unit.

Plaintiff was ordered to return to his housing unit, and he was given a bubble packet of generic brand antibiotics to deal with the infection in his knee that was causing the fluid to come out in large amounts.

(Wood Aff. ¶¶ 32-40.)

The plaintiff was seen for follow-up, as Dr. Grossman ordered, on February

9

14, 2011.  The medical record from this date states that there was no redness or swelling, that Dr. Grossman was updated, that there were no changes, and to continue on antibiotic. (Bender Aff., Exh. A:15.)

On February 15, 2011, the plaintiff awoke with a red, hot knee.  He was taken to the emergency room where it was determined he had a severe infection.  (Wood Aff. ¶ 42.) The plaintiff was administered morphine, hydromorphine, and vancomycin.  (Wood Aff. ¶ 49.)  He was transported to Waupun Memorial Hospital and the next morning, Dr. Grossman performed emergency surgery to treat the infection.  (Wood Aff. ¶¶ 53-54.)  He had to have a second surgery on February 18, 2011.  (Wood Aff. ¶ 57.)  The plaintiff suffered from severe pain following the surgeries and went through a long and agonizing healing process. (Wood. Aff. ¶ 64.)

Defendant Bender's only alleged contact with the plaintiff occurred on February 11, 2011.[2]  Bender was not responsible for cleaning the plaintiff's surgical wounds nor for changing the bandages.  Others cared for the plaintiff before and after February 11, 2011.

**ANALYSIS**

**A.  Defendants Billings and Neil**

Defendants Billings and Neil contend that the plaintiff failed to exhaust his administrative remedies.  The plaintiff contends that he was prevented from exhausting

---

[2] The plaintiff asserts that others may have relayed his complaints to Bender prior to February 11, 2011.

because RCI has created a protocol that forces inmates to wait more than fourteen days before re-filing an inmate complaint thereby making their inmate complaints untimely.

The Prison Litigation Reform Act of provides in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is a condition precedent to suit. *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002) (citing *Perez v. Wis. Dep't of Corrs.*, 182 F.3d 532, 535 (7th Cir. 1999)). Section 1997e applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The exhaustion requirement requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006); *see also Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require"). Exhaustion is an affirmative defense, and the burden of proof is on the defendants. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (citing *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004)).

The exhaustion requirement applies only when exhaustion procedures are actually available to the prisoner. *Hurst v. Hantke*, 634 F.3d 409, 411 (7th Cir. 2011). If, for

example, prison officials or circumstances have somehow made administrative remedies unavailable to the prisoner, then the prisoner does not need to exhaust all of the administrative remedies. *See, e.g., Pavey v. Conley*, 663 F.3d 899, 906 (7th Cir. 2011) (administrative remedy unavailable where officials misinformed prisoner of the administrative process); *Hurst*, 634 F.3d at 411 (remedy unavailable where the elements of procedure for obtaining it are concealed); *Dole*, 438 F.3d at 809 (remedy unavailable where officers do not respond to properly filed grievance or otherwise prevent exhaustion); *Curtis v. Timberlake*, 436 F.3d 709, 711 (7th Cir. 2005) (remedy unavailable where officials somehow encourage noncompliance).

The defendants contend that the plaintiff failed to exhaust because RCI-2013-17380 was rejected as untimely. According to the defendants, the plaintiff failed to submit documentation to the ICE office as directed by Nancy Padgett in her May 5, 2011 memo accompanying his returned inmate complaint. The defendants also point out that the plaintiff was required to exhaust before filing suit and that since he did not file RCI-2013-17380 until after he filed this lawsuit, he did not satisfy that requirement. *See Perez*, 182 F.3d at 535 (lawsuit brought by prisoner before administrative remedies are exhausted must be dismissed).

It is undisputed that on May 5, 2011, the plaintiff's initial inmate complaint was returned to him along with a memo instructing him that he had to complete the Chain of Command before he could file his inmate complaint. The memo advised that the next step

in the Chain of Command was to contact Deputy Warden Dr. Apple. The plaintiff was also directed that he needed to provide the ICE with "written documentation of your attempts to resolve the issue as directed." "Written documentation" was defined as "responses to interview requests and other written responses from the staff contacted." Finally, the memo directed the plaintiff to "resubmit your complaint (with all pertinent documentation) for processing by this office within 14 calendar days of the date of this return letter."

The plaintiff wrote a letter to Dr. Apple the following day and he received no response. He did not receive any of the required "documentation" within 14 days. Nonetheless, the plaintiff continued with his attempts to contact Dr. Apple and then Dr. Burnett in order to obtain the required documentation but received none. Despite the plaintiff's lack of receipt of timely documentation, or any documentation for that matter, he resubmitted his inmate complaint twice. Both times, the inmate complaint was returned to him without explanation.

The availability of administrative remedies "is not a matter of what appears on paper, but, rather, whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed. App'x. 10, 13 (7th Cir. 2009) (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). In *Wilder*, the Seventh Circuit set forth a number of situations in which it found that administrative remedies were not, in fact, available: (1) where grievances must be filed on a particular form, but prison officials do not provide that form to the prisoner; (2) where prison officials threaten the prisoner in some way; (3) where prison officials tell the

prisoner to wait to file his grievance, thus making the claim untimely; (4) where prison officials do not timely respond to the prisoner's grievance; or (5) where prison officials engage in some sort of affirmative misconduct. *Wilder*, 310 Fed. App'x at 13 (citing *Dale*, 376 F.3d at 656; *Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004); *Brown v. Croak*, 312 F.3d 109, 112 (3d Cir. 2002); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Dole*, 438 F.3d at 809). In sum, the Seventh Circuit states that its approach "has been to focus on whether the plaintiff did all he could to avail himself of the administrative process. If he followed the prescribed steps and could do nothing more, then available remedies were exhausted." *Wilder*, 310 Fed. App'x. at 13 (citing *Dole*, 438 F.3d at 811). "When the prisoner causes the unavailability of the grievance process by simply not filing a grievance in a timely manner, the process is not unavailable but rather forfeited. On the other hand, when prison officials prevent inmates from using the administrative process...[it] becomes unavailable." *Kaba*, 458 F.3d at 684. To make this showing, the defendants must "establish affirmatively that the evidence is so one-sided that no reasonable fact finder could find that the plaintiff was prevented from exhausting his administrative remedies." *Branham v. Snow*, 392 F.3d 896, 906-07 (7th Cir. 2004).

The record reveals that the plaintiff attempted to comply with Nancy Padgett's May 5, 2011, memo. When he was unable to do so through no fault of his own, the plaintiff resubmitted his inmate complaint anyway, but it was twice returned to him unfiled. Accordingly, administrative remedies were unavailable to the plaintiff before he filed this

lawsuit.

The fact that the plaintiff filed RCI-2013-17380 after he filed this lawsuit and that the inmate complaint was rejected as untimely does not change the Court's determination that administrative remedies were unavailable to the plaintiff. It appears that RCI-2013-17380 was accepted and filed because the plaintiff included letters he had written to Dr. Apple and Dr. Burnett along with the inmate complaint and that these letters qualify as the "documentation" requested in Nancy Padgett's memo. Apparently, the plaintiff did not include his letters to Dr. Apple and Dr. Burnett in the two inmate complaints he submitted that were returned to him unfiled and without explanation before he filed this lawsuit. However, as set forth herein, the memo defined "documentation" as written responses from the staff contacted. The plaintiff did not have any "documentation." Therefore, the fact that the plaintiff did not previously submit his letters to Dr. Apple and Dr. Burnett does not explain the refusals to accept the prior inmate complaint.

The plaintiff did all he could to exhaust administrative remedies before he filed this lawsuit. Based on the foregoing, the Court finds that administrative remedies were unavailable to him. Thus, defendants Billings and Neil's motion for summary judgment for failure to exhaust will be denied.

**B. Defendant Bender**

Defendant Bender contends that he is entitled to judgment as a matter of law because he was not deliberately indifferent to a serious medical need. He contends that the

15

plaintiff's knee did not present a serious medical need and that he was not deliberately indifferent to the plaintiff's condition. The plaintiff contends that Bender is not entitled to summary judgment because there are genuine issues of material fact.

"The Eighth Amendment safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (quoting *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009); *see also Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Prison officials violate the Constitution if they are deliberately indifferent to prisoners' serious medical needs. *Arnett*, 658 F.3d at 750 (citing *Estelle*, 429 U.S. at 104). Accordingly, a claim based on deficient medical care must demonstrate two elements: 1) an objectively serious medical condition; and 2) an official's deliberate indifference to that condition. *Arnett*, 658 F.3d at 750 (citation omitted). "Deliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez*, 577 F.3d at 828 (quoting *Estelle*, 429 U.S. at 103).

The Court will focus on the deliberate indifference prong of an Eighth Amendment claim. To demonstrate deliberate indifference, a plaintiff must show that the defendant "acted with a sufficiently culpable state of mind," something akin to recklessness. A prison official acts with a sufficiently culpable state of mind when he or she knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk.

*Roe*, 631 F.3d at 857.  Deliberate indifference "is more than negligence and approaches intentional wrongdoing."  *Arnett*, 658 F.3d at 759 (quoting *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 988 (7th Cir. 1998)).  It is not medical malpractice; "the Eighth Amendment does not codify common law torts."  *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

The plaintiff contends that there are three factual disputes precluding summary judgment in this case.  First, he charges that a material factual issue in dispute is whether defendant Bender had an obligation as the primary health care giver to follow the orders of Dr. Grossman regarding cleaning the surgical wound.  However, there is no evidence in the record to dispute Bender's averment that the first notice he received of the plaintiff's knee was on February 11, 2011, that others cared for the plaintiff before and after February 11, 2011, and that Bender was not responsible for cleaning the plaintiff's surgical wounds nor for changing the bandages.  (Bender 2d Aff. ¶¶ 6-8.)

Second, the plaintiff contends that it is disputed whether he was in obvious pain when Bender observed him on February 11, 2011.  Third, and relatedly, the plaintiff contends that it is disputed whether it was obvious that he was in a great deal of pain and needed medical assistance from a medical doctor.

It is undisputed that Bender saw the plaintiff on February 11, 2011.  That day, Nurse Neil examined the plaintiff and consulted with Dr. Grossman.  Dr. Grossman ordered that the plaintiff be provided with pain medication and antibiotics, and to follow-up on

February 14, 2011. Dr. Grossman's orders were followed. According to the plaintiff, Bender stood at the doorway and observed him, refusing to enter the room to examine him. Instead, Bender looked in from a distance and said that the plaintiff's knee was "just draining." Bender then walked away, ignoring the plaintiff's cries for help. (Wood Aff. ¶ 38.)

"A jury can infer deliberate indifference on the basis of a physician's treatment decision [when] the decision [is] so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Arnett*, 658 F.3d at 759 (quoting *Duckworth*, 532 F.3d at 679). A plaintiff can show that the professional disregarded the need only if the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment, that is, that "no minimally competent professional would have so responded under those circumstances." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (quotation marks omitted). However, a prisoner "need not prove that the prison officials intended, hoped for, or desired the harm that transpired." *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). "Nor does a prisoner need to show that he was literally ignored." *Arnett*, 658 F.3d at 759 (citing *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). That the prisoner received some treatment does not foreclose his deliberate indifference claim if the treatment received was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate his condition." *Arnett*, 658 F.3d at 759 (quoting *Greeno*, 414 F.3d at 653). However, deliberate indifference is a high standard; it requires proof that the state officials actually knew of the inmate's serious medical need and

18

that they disregarded it. *Walker*, 293 F.3d at 1037.

Here, when Bender saw the plaintiff on February 11, 2011, Nurse Neil had just examined him and received instructions from Dr. Grossman regarding medication and follow-up care. Per Dr. Grossman, the plaintiff was to receive pain medication and an antibiotic. Bender followed through on Dr. Grossman's order and noted the orders for Vicodin and Cipro. Dr. Grossman also ordered a follow-up visit on February 14, 2011. The plaintiff was seen for his follow-up appointment on February 14, 2011, and the medical record indicates that there was no swelling or redness at that time.[3] Dr. Grossman was updated and the plaintiff continued on the antibiotic.

Defendant Bender's only contact with the plaintiff was on February 11, 2011. On that date, although he did not personally examine the plaintiff, he followed through on Dr. Grossman's orders regarding the plaintiff's medical care. The record does not support a finding that Bender acted with deliberate indifference to the plaintiff's medical need. Accordingly, Bender's motion for summary judgment will be granted.

### Plaintiff's Motion to Appoint Counsel

The plaintiff has filed a motion to appoint counsel. He contends that his claim is meritorious, counsel will be better at investigating the case, and that he is an unskilled litigant. The plaintiff asserts that he has primarily relied on a jailhouse lawyer so far and

---

[3] The plaintiff avers that between February 11 and February 14, 2011, he repeatedly had unit officers contact the HSU to tell them about his pain and the growing infection. However, there is no indication that any of these requests were directed to Bender or that he received notice of any of them.

there is no guarantee the jailhouse lawyer can continue assisting him. He also asserts that he is in constant pain from his knee which would prevent him from effectively litigating on his own. The plaintiff states that this is a complex case and that he unsuccessfully tried to find an attorney.

The Court has discretion to recruit counsel to represent a litigant who is unable to afford one in a civil case. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. § 1915(e)(1); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866-67 (7th Cir. 2013). As a threshold matter, litigants must make a reasonable attempt to secure private counsel on their own. *Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir. 2007). If the plaintiff makes a reasonable attempt to secure counsel, the Court must examine "whether the difficulty of the case – factually and legally – exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, 781 F.3d at 696 (citing Pruitt, 503 F.3d at 655). This inquiry focuses not only the plaintiff's ability to try his case, but also includes other "tasks that normally attend litigation" such as "evidence gathering" and "preparing and responding to motions." *Id.*

The plaintiff has satisfied the threshold requirement of trying to find an attorney on his own. However, although this is a medical care case, it is not a complex one. Rather, the plaintiff's claim against the remaining defendants center on whether they followed Dr. Grossman's ordering regarding post-operative care on the plaintiff's knee. In addition, the plaintiff's filings demonstrate that he is capable to proceed on his own at this

time.  Based on the plaintiff's statement that he has primarily relied on a jailhouse lawyer, it would appear that he has also prepared some filings on his own but it is unclear which ones he did prepare on his own.  In addition, there is no indication that the plaintiff will be unable to conduct discovery relative to the remaining defendants.  His claim arose at RCI and he remains incarcerated there.  At this time, based on the relative straight-forwardness of the plaintiff's claim and the high quality of his filings, the Court will deny the plaintiff's request for counsel.

        **IT IS THEREFORE ORDERED** that defendants Billings and Neil's motion for summary judgment (Docket # 36) is **denied**.

        **IT IS FURTHER ORDERED** that defendant Bender's motion for summary judgment (Docket # 40) is **granted**.  Defendant Bender is dismissed from this case.

        **IT IS FURTHER ORDERED** that the plaintiff motion to appoint counsel (Docket # 52) is **denied**.

        Dated at Milwaukee, Wisconsin, this 8th day of September, 2014.

        **SO ORDERED,**

**HON. RUDOLPH T. RANDA**
**U. S. District Judge**

21