UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**LORENZO WOOD, JR.,**

            Plaintiff,

        -vs-                                                    Case No. 13-CV-281

**PATRICIA BILLINGS and
SUE NEIL,**

            Defendants.

## DECISION AND ORDER

Plaintiff Lorenzo Wood, who is representing himself, filed an amended complaint pursuant to 42 U.S.C. §1983, alleging that his civil rights had been violated. (ECF No. 34.) The Court screened the plaintiff's amended complaint pursuant to 28 U.S.C §1915A(a) and allowed him to proceed with his claims that Sue Neil, Patricia Billings, and Mark Bender were deliberately indifferent to his serious medical condition in violation of the Eighth Amendment. (ECF No. 33.) The Court granted Bender's motion for summary judgment on September 8, 2014. (ECF No. 55.) On January 19, 2016, Neil filed a motion for summary judgment. That motion is now fully briefed and ready for the Court's decision.[1]

---

[1] The plaintiff filed a motion to strike Neil's motion for summary judgment. Because the Court is denying Neil's motion, it will deny the plaintiff's motion as moot.

## I. RELEVANT FACTS[2]

At the relevant time, the plaintiff was incarcerated at the Racine County Correctional Institution ("Racine"), which is a medium-security institution. Defendant Neil is currently employed by the Wisconsin Department of Corrections ("DOC") as a Nurse Clinician 2 at Racine.

On November 3, 2010, the plaintiff had an MRI exam. Shortly thereafter, he was diagnosed with a probable ACL tear to his left knee. On December 17, 2010, the plaintiff was seen by Dr. Grossman at Waupun Memorial Hospital for an orthopedic consultation. On January 27, 2011, Dr. Grossman performed a surgical procedure on the plaintiff's left knee. Dr. Grossman also provided post-op orders that included the following: prescription for the pain reliever Lortab, weight bearing as tolerated, dressing changes for seventy-two hours then a switch to band aids, a hinged knee brace, elevation of the knee/leg, ice on the affected area, and notification to the Racine doctor in the event the knee becomes swollen.

According to the medical records, on January 31, 2011, Racine nurse Debbie Nutting cleaned the surgery site and changed the dressings, at which time she noted no sign of infection. However, the plaintiff states that no one

---

[2] The facts in this section are primarily taken from Defendant's Reply to Plaintiff's Response to Defendant Neil's Amended Proposed Findings of Fact. (ECF No. 107.) Other facts are taken from the Sworn Affidavit of Plaintiff Lorenzo Wood, Jr. (ECF No. 27.) *See Ford v. Wilson*, 90 F.3d 245, 246-47 (7th Cir. 1996). The Court indicates when a fact is in dispute.

examined him on January 31, 2011, nor did anyone clean the surgery site that day. He explains, "Any alleged exhibits put into evidence by [Neil] . . . is nothing but a fabrication by [Racine] nursing staff to doctor up the records." (ECF No. 107 ¶8.)

On February 10, 2011, Nurse Billings removed the plaintiff's stiches. The medical records indicate there was no sign of infection. The plaintiff agrees that Billings removed his stiches that day, but he disagrees that there was no sign of infection. Later that day, Nurse Amandy Moore (the plaintiff argues it was Billings) examined the plaintiff's knee. He complained of pain and stiffness with drainage that increased after the stiches were removed. According to the medical records, the plaintiff's wounds were cleaned, antibiotic ointment was applied to the wounds, and he was given pain medication, ice, and supplies for bandage changes.

Neil examined the plaintiff's knee the following day, on February 11, 2011, for the first time. The plaintiff complained of "spurting serous fluid from medial aspect of an old suture site." (*Id*. at ¶11.) He denied chills, but complained of "increased stiffness in his right [sic] knee and large amounts of drainage." (*Id*.) Neil states that she consulted with Dr. Grossman and physician's assistant Mark Bender. Neil states that she spoke with Dr. Grossman on the phone, and he instructed that the surgical wound site be reinforced with steri-strips and an Ace wrap. He also reordered pain

- 3 -

medication and prescribed an antibiotic. According to Neil, Dr. Grossman ordered her to follow up with the plaintiff on February 14, 2011.

Neil states that on February 14, 2011, she followed up with the plaintiff as instructed. She noted that the plaintiff's knee had no redness or swelling and that the steri-strips were intact. She observed a small amount of drainage. She updated Dr. Grossman, who made no changes to his treatment instructions. The plaintiff disputes Neil's statements, arguing that she did not examine him on February 14, 2011.

According to the final report authored by Dr. Grossman, he contacted Racine health staff on February 14 and someone (Neil does not clarify who) reported that the plaintiff was healing well. Dr. Grossman recommended that the knee be steri-stripped and that the plaintiff start antibiotics.

Neil states that she followed Dr. Grossman's orders by ensuring the wound was steri-stripped and ordering the Ciprofloxacin. She also states that she had no further involvement with the treatment of the plaintiff's left knee after February 14, 2011.

According to the medical records, the next day, on February 15, 2011, Racine staff contacted Dr. Grossman to inform him that the plaintiff's knee was not doing well. Dr. Grossman recommended that the plaintiff be transported to the emergency room. The plaintiff was later assessed with a probable septic left knee. Dr. Grossman recommended emergent arthroscopy

- 4 -

with irrigation. The plaintiff underwent an irrigation and debridement procedure and a second-look arthroscopy on February 18, 2011.

On February 24, 2011, the plaintiff was admitted to the infirmary at the Dodge Correctional Institution, where he received treatment for his knee. On March 23, 2011, he was discharged back to Racine.

## II. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a

- 5 -

genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## III. ANALYSIS

"The Eighth Amendment safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (quoting *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009)); *see also*, *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). "Deliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez*, 577 F.3d at 828 (quoting *Estelle*, 429 U.S. at 103). Thus, prison officials violate the Constitution if they are deliberately indifferent to prisoners' serious medical needs. *Arnett*, 658 F.3d at 750 (citing *Estelle*, 429 U.S. at 104). A claim based on deficient medical care must demonstrate two elements: (1) an objectively serious medical condition; and (2) an official's deliberate indifference to that condition. *Arnett*, 658 F.3d at 750 (citing *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006)).

Neil does not dispute that the post-operative state of the plaintiff's knee was an objectively serious medical condition, so the Court will focus only on whether the plaintiff has identified a genuine dispute of material fact regarding whether Neil was deliberately indifferent to that condition.

Neil argues that she was not because she provided the plaintiff with appropriate medical care, according to the direction of Dr. Grossman and P.A. Bender. She states that she saw the plaintiff only two times and each time she used her medical judgment, contacted the treating provider for instructions, and then followed those instructions. Neil relies on the medical records, which this Court previously determined were reliable and admissible per Fed. R. Evid. 902(11).

The plaintiff, on the other hand, argues that the medical records are not accurate. He states that they were falsified in an effort to cover up the medical staff's inattention to his condition. Contrary to Neil's statement, the plaintiff states that *no one* examined his knee on February 14, 2011, despite his repeated requests that health services be informed about the pain in his knee and the growing infection. (ECF No. 27 ¶41-42.)

As previously explained, at summary judgment, a court must credit the non-moving party's version of the events. Here, the plaintiff states in a sworn affidavit that Neil did not examine his knee on February 14, 2011, as Dr. Grossman instructed her to. Given that the plaintiff was admitted to the

- 7 -

emergency room the very next day and assessed with septic shock, a jury could conclude that Neil's failure to examine the plaintiff, despite instructions to do so and despite the plaintiff's repeated complaints about the pain and spreading infection, demonstrated deliberate indifference to his serious medical condition. As such, the Court must deny Neil's motion for summary judgment.

On a final note, Neil argues that the Court has already determined the medical records to be reliable and admissible. This is true; however, Neil misconstrues the significance of that ruling. In making that determination, the Court found only that the records were what they purport to be and therefore are admissible as evidence. The Court did *not* make any determination regarding the accuracy or truthfulness of the information contained within the records. Thus, a fact finder may rely on these records when determining whether to believe Neil's or the plaintiff's version of the events, but the plaintiff is not foreclosed from arguing (as he does) that the contents of the medical records are false. Whether he or Neil is telling the truth is a question that the Court cannot resolve at summary judgment.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT** defendant Sue Neil's motion for summary judgment (ECF No. 94) is **DENIED.**

**IT IS ALSO ORDERED THAT** the plaintiff's motion to strike Neil's motion for summary judgment (ECF No. 104) is **DENIED** as moot.

The Court will attempt to find a volunteer attorney to represent the plaintiff *pro bono* (without cost to the plaintiff) on his surviving claims.

Dated at Milwaukee, Wisconsin, this 27th day of May, 2016.

**BY THE COURT:**

_____
**HON. RUDOLPH T. RANDA
U.S. District Judge**

- 9 -

Case 2:13-cv-00281-PP   Filed 05/27/16   Page 9 of 9   Document 110